LEE LITIGATION GROUP, PLLC
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANDRA CALDERON, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,* | Case No.: |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | Jury Trial Demanded |
| IDEAL HOME HEALTH INC, | |
| Defendant. | |

Plaintiff, SANDRA CALDERON ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant IDEAL HOME HEALTH INC ("Defendant") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime compensation, due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including

overtime compensation, due to time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.     Plaintiff further alleges that, pursuant to the New York State Human Rights Law, New York Executive Law §296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Plaintiff was deprived of her statutory rights as a result of Defendant's fostering a hostile work environment, discrimination based on Plaintiff's gender and sexual orientation, and failure to accommodate, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

4.     Defendant IDEAL HOME HEALTH INC is a for-profit organization serving senior citizens and people with intellectual and/or physical developmental challenges throughout New York State.

5.     Plaintiff, putative collective members, class members and all current and former direct support professionals of Defendant, are all victims of Defendant's underpayment of wages, including overtime. Defendant instituted three policies resulting in the underpayment of all class members.  First, Defendant created a policy of only permitting employees to clock-in using the phone of the physically and/or mentally challenged client for whom the employee was tasked to provide support.  As a consequence of this policy, employees always reported to their location of work and began working before Defendant's policy permitted the employee to clock-in.  Due to Defendant's clients, who are senior citizens or persons with physical and/or mental challenges, frequently changing phones, changing phone numbers, and failing to keep phones charged or available, Plaintiff, putative collective members, class members and all current and former direct support professionals of Defendant were frequently delayed in clocking-in or unable to clock-in

at all.  Second, despite Defendant's policy that employees stay on the client's premises working during lunch to respond to any of the client's needs, Defendant always deducted a half-hour from employees' compensable time.  Third, Defendant would not compensate any time occurring after an employee's scheduled shift, even if the client Plaintiff and putative class members were required to stay late to escort client home after activities like physical therapy and doctor's appointments.

6.      In addition to the above, Plaintiff brings individual claims stemming from abuse and harassment endured by Plaintiff at the workplace, with Defendant's full knowledge. Plaintiff was sexually harassed and discriminated against by, Jose Gonzalez, Defendant's client, to whom Plaintiff was providing care.  Plaintiff's abuse culminated in Plaintiff filing a police report for the sexual misconduct of Mr. Gonzalez.  When Defendant was informed of this, Defendant demanded Plaintiff return to her abuser rather than ensure a safe workplace for their employee.  Plaintiff refused this absurd demand, and Defendant failed to properly relocate Plaintiff away from an environment, which they knew was resulting in daily sexual mistreatment.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391, as Defendant's headquarters, where the policies and procedures giving rise to this action were set, is located at 2617 East 16th Street 2nd Floor, Brooklyn, NY 11235.

## PARTIES

9.      Plaintiff SANDRA CALDERON is a resident of Brooklyn, New York.

10.     Defendant IDEAL HOME HEALTH INC, is a domestic corporation organized under the laws of New York, with headquarters located at 2617 East 16th Street 2nd Floor, Brooklyn, NY 11235 and an address for service of process located at 1402 Avenue Y, Brooklyn, NY 11235.

11.     At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

12.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class members had an employment relationship with Defendant under FLSA and NYLL.

13.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all direct support professionals, including home health aides, home attendants, and caregivers, employed by Defendant on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

15.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs for their proper wages, including

overtime, due to a policy of time-shaving. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

16.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

17.     Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former direct support professionals, including home health aides, home attendants, and caregivers,  employed by Defendant on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

18.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

19.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the

calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

20.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices of Defendant, including (i) failing to pay wages, including overtime compensation, due to time-shaving, (ii) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the New York Labor Law. Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendant.

21.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are

small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23.     Defendant and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a)  Whether Defendant employed Plaintiff and the Class members within the meaning of the New York law;

b)  What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiff and the Class members for their work;

d)  Whether Defendant properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e)  Whether Defendant paid Plaintiff and the Class members the overtime premium at one-and-one-half times their regular hourly rates for all hours worked in excess of forty (40) each workweek;

f)  Whether Defendant operated their business with a policy of failing to pay Plaintiff and the Class members for all hours worked due to a policy of time-shaving;

g)  Whether Defendant provided to Plaintiff and the Class members proper wage and hour notices at date of hiring as required under the New York Labor Law; and

h)  Whether Defendant provided proper wage statements informing Plaintiff and Class members of their proper overtime rate of compensation and other information required to be provided on wage statements with each payment of wages, as required under the New York Labor Law.

## STATEMENT OF FACTS

**Wage & Hour Claims:**

25. In or around August 2022, Plaintiff SANDRA CALDERON was hired by Defendant to work as a direct support professional with the job title Home Attendant for Defendant Ideal Home Health Inc. Plaintiff's employment with Defendant terminated in or around October 2022.

26. Throughout her employment, Plaintiff was assigned by Defendant to work at the home of Jose Gonzalez ("Client"), to take care of Client's health and household.

27. Client lived with his two adult nephews. Plaintiff's duties as a direct support professional included but are not limited to: general personal care of Client, cooking and preparing Client's meals, cleaning Client's household, and transporting Client around to various destinations.

28. Throughout her employment, Plaintiff was compensated at an hourly rate of seventeen dollars ($17) per hour.

29. Throughout her employment, Plaintiff was scheduled to work seven (7) days per week, from 7:00 a.m. to 2:00 p.m. on Monday to Friday, and from 7:00 a.m. to 12:00 p.m. on Saturday and Sunday.

30. Upon arriving at any site to care for Defendant's clients, Plaintiff, FLSA Collective Plaintiffs, and Class Members, begin work immediately. Despite Plaintiff, FLSA Collective Plaintiffs, and Class Members starting work upon arrival, Defendant's policy does not permit these employees to clock-in immediately. Instead, Plaintiff, FLSA Collective Plaintiffs, and Class Members are reliant upon the client to call on their behalf to clock the employees in. This procedure of Plaintiff, FLSA Collective Plaintiffs, and Class Members commencing work,

but not being clocked-in until the Defendant's clients, who have no incentive to timely clock employees in, find their phone, ensure it is charged, acquire Defendant's number, and properly call to clock-in Plaintiff, FLSA Collective Plaintiffs, and Class Members.  This procedure takes an average 5-10 minutes per clock-in for Plaintiff, FLSA Collective Plaintiffs, and Class Members.

31.     Additionally, Defendant's requirement that Plaintiff clock in and out for her shifts using the Client's smartphone resulted in approximately 12 days for which Plaintiff was not paid at all.  Defendant's Client's phone was unable to be used by Plaintiff for clocking in or out of her shifts for these 12 days and, despite Plaintiff notifying Defendant of the Client's inability to clock her in, Defendant never compensated Plaintiff for any of these days.  Similarly, Plaintiff, FLSA Collective Plaintiffs, and Class Members, whose clients lost phones, changed phones, or changed numbers would be unable to be clocked-in and would receive no compensation for days worked.

32.     Further, approximately four (4) times a week, Plaintiff was required to stay past her scheduled times with Client to attend him during his various doctor appointments and physical therapy.   During these days, Plaintiff was required to continue working two (2) additional hours. However, Plaintiff was only ever compensated for her scheduled times, resulting in up to eight (8) of Plaintiff's hours being timeshaved per week. Similarly, FLSA Collective Plaintiffs and Class Members who stayed past their shifts to care for Defendant's clients were only compensated for their scheduled shift.

33.     Plaintiff, FLSA Collective Plaintiffs, and Class Members were never permitted a free and clear lunch break. Plaintiff, FLSA Collective Plaintiffs, and Class Members were required to stay at their job site at all hours. Consequently, Plaintiff, FLSA Collective Plaintiffs,

and Class Members were required to stay on site, continue to work, and could not take a free and clear lunch break. Despite the lack of free and clear lunch breaks, Defendant would automatically deduct 30 minutes from Plaintiff, FLSA Collective Plaintiffs, and Class Members daily compensable time.

34.     Defendant did not provide Plaintiff with proper wage statements at all relevant times. Similarly, Class members did not receive proper wage statements, in violation of the NYLL.

35.     Defendant never provided Plaintiff with a proper wage notice as required by the NYLL. Similarly, Class Members were never provided with proper wage notices.

36.     In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

37.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendant's conduct actually harmed Plaintiff and Class members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and

overtime rates, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees. Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

38.    Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff to struggle to timely pay bills. Class members similarly struggle to timely pay debts due to Defendant continued attempts to hide wrongdoing from employees.

39.    Due to these unlawful acts of Defendant, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action.

**Discrimination and Failure to Provide Accommodation Claims**:

40.    In addition to the above, Plaintiff suffered from Defendant's discriminatory practices and hostile work environment fostered by Defendant on the basis of her gender and sexual orientation, and Defendant's failure to provide accommodation, as described below.

41.    Plaintiff was sexually harassed by Client and his two nephews every day, harassment which intensified once the Client and his nephews discovered her sexual orientation.

42.     Every day, Client's adult nephews would remove their clothing down to their underwear and walked around the house in only their underwear in front of Plaintiff, in perverted attempts to incite a sexual encounter with Plaintiff. Client's nephews would make unprovoked sexual offers to Plaintiff, such as "We know you're lesbian, but we can still fuck.," while only wearing their underwear.

43.     Every day, Client regularly revealed his genitalia to Plaintiff and would make sexually charged demands such as "come clean my dick!" among others. Further, Client would grope Plaintiff's breasts and buttocks every day.

44.     The Client would request or make Plaintiff perform tasks that were not part of her agreed upon responsibilities or were illegal. Client would make Plaintiff take care of his adult nephews, cook for them, clean for them, do their laundry, among other things. This was not part of her job, as Client was the only person Plaintiff was supposed to be caring for. Further, Client would regularly ask Plaintiff to steal delivery packages from other tenants in Client's apartment complex, or to sell EBT food stamps for him, among other requests for illegal activities. Plaintiff declined all of the requests to perform illegal activities.

45.     Plaintiff complained to Defendant about the discrimination, sexual harassment, and hostile work environment she suffered at Client's household, as well as Client's constant requests for Plaintiff to perform illegal activities or to take care of Client's nephews.

46.     Plaintiff repeatedly requested to be transferred to another household. However, Defendant never accommodated Plaintiff's request to be relocated.

47.     In or around October 2022, Plaintiff was forced to file a police report due to the Client's abuse.

48.     In or around October 2022, Plaintiff once again informed Defendant of the abuse, the now filed police report, and requested transfer to a different household.

49.     After learning of the now filed police report and hearing another request for transfer, Defendant demanded she continue to service the Client.

50.     Defendant exhibited an appalling, callous disregard for the Plaintiff's wellbeing and safety even in the face of Plaintiff being assaulted by Defendant's Client.

51.     Defendant knowingly and willfully created and fostered a hostile work environment through forcing Plaintiff to work alone at a private household with three men who were sexually harassing her on a daily basis.

52.     Plaintiff rightfully refused to return to the Client's address, despite Defendant's insistence, and Defendant's failure to accommodate Plaintiff's reasonable request to be relocated away from daily sexual mistreatment.

53.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACTON
### ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

54.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

55.     At all relevant times, Defendant was and continues to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

56.     At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57.      At all relevant times, Defendant had gross annual revenues in excess of $500,000.00.

58.     At all relevant times, Defendant willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages, including overtime, in the lawful amount for all hours worked due to a policy of time-shaving.

59.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

60.     Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

61.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

62.     Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving, and an equal amount as liquidated damages.

63.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

64.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

65.     At all relevant times, Plaintiff and the Class members were employed by Defendant within the meaning of the New York Labor Law §§ 2 and 651.

66.     At all relevant times, Defendant had a policy and practice of time-shaving that failed to pay Plaintiff and Class members for all hours worked.

67.     Defendant failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

68.     Defendant failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees in direct violation of the New York Labor Law.

69.     Defendant failed to provide proper wage statements with every payment issued to Plaintiff and the Class members, as required by New York Labor Law § 195(3).

70.     Due to Defendant's New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendant their unpaid wages, including overtime hours, due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## COUNT III

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>

71.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

72.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, on the basis of gender and sexual orientation.

73.     Plaintiff was an employee and qualified person within the meaning of the NYSHRL and Defendant is a covered employers under the NYSHRL.

74.     Defendant operated a business that discriminated against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of her employment because of her gender and sexual orientation in ways including, but not limited to:

        a.     Creating and fostering a hostile work environment based on Plaintiff's gender and sexual orientation; and

        b.     Failure to act upon Plaintiff's reports of being sexually harassed and discriminated;

75.     Defendant's conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of the NYSHRL.

76.     As a result of Defendant's unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

77.     Due to Defendant's violations under the NYSHRL, based on discrimination on the basis of gender and sexual orientation, Plaintiff is entitled to recover from Defendant: (1)

back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

78.     Additionally, Defendant violated the NYSHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through forcing Plaintiff to work alone at a private household where she is sexually harassed on a daily basis.

79.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to her quitting.

80.     As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

**COUNT IV**
**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW,**
**ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107 ("NYCHRL")**

81.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

82.     At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and Defendant is a covered employers under the NYCHRL.

83.     Defendant operated a business that discriminated against Plaintiff in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and

privileges of her employment because of her gender and sexual orientation in various ways, including but not limited to:

      a.    Creating and fostering a hostile work environment based on Plaintiff's gender and sexual orientation; and

      b.    Failure to act upon Plaintiff's reports of being sexually harassed and discriminated;

84. Defendant's conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the NYCHRL.

85. As a result of Defendant's unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

86. Due to Defendant's violations under the NYCHRL, based on discrimination on the basis of gender and sexual orientation, Plaintiff is entitled to recover from Defendant: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

87. Additionally, Defendant violated the NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through forcing Plaintiff to work alone at a private household where she is sexually harassed on a daily basis.

88. The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to her quitting.

89. As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without

limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

<h3 style="text-align:center"><u>COUNT V</u></h3>

<h3 style="text-align:center"><u>DISCRIMINATION UNDER THE NYCHRL, ADMINISTRATIVE CODE § 8-107<br>(SUPERVISOR LIABILITY)</u></h3>

90.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

91.     Pursuant to NYCHRL, New York City Administrative Code Title 8-107(13), an employer is liable for the discriminatory conduct by an employee, agent or independent contractor, and states, in relevant part:

(a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

(b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

92.     Defendant violated the section cited herein as set forth. Defendant discriminated against Plaintiff based on her sex.

93.     At all relevant times, Defendant operated a business that discriminated against Plaintiff on the basis of her sex.

94.     Due to Defendant's violation under the NYCHRL, New York City Administrative Code § 8-107, based on discrimination on the basis of Plaintiff's sex, Plaintiff is entitled to recover from Defendant: (1) compensatory damages, (2) punitive damages, and (3) attorneys' and expert fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL, and NYCHRL;

b.  An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid compensation due to time-shaving under the FLSA and NYLL;

d.  An award of statutory penalties as a result of Defendant's failure to comply with wage statement and notice requirements under the NYLL;

e.  An award of liquidated damages as a result of Defendant's willful failure to pay all wages pursuant to the FLSA and NYLL;

f.  An award of compensatory damages for Plaintiff's mental, physical, and emotional suffering as a result of Defendant's unlawful discriminatory practices, pursuant to NYSHRL and NYCHRL;

g.  An award of punitive damages for Defendant's unlawful discriminatory practices, pursuant to NYSHRL and NYCHRL;

h.  An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

i.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as a Representative of the Class;

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 13, 2023                    Respectfully submitted,

                                            LEE LITIGATION GROUP, PLLC

                              By:    */s/ C.K. Lee*_____

                                     C.K. Lee (CL 4086)
                                     Anne Seelig (AS 3976)
                                     148 West 24th Street, 8th Floor
                                     New York, NY 10011
                                     Tel.: 212-465-1188
                                     Fax: 212-465-1181
                                     *Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*